UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO. 21-CR-157 (TNM) |
| | : | |
| CHRISTIAN SECOR, | : | |
| Defendant. | : | |

## OPPOSITION TO MOTION FOR REVIEW OF
## BOND DECISION

On January 6, 2021, the defendant, Christian Secor, waving a large flag with the emblem of America First, stormed the United States Capitol building, walked within feet of the office suite were Speaker of the House Nancy Pelosi's staffers were hiding from rioters, helped a crowd push open the door to the Rotunda allowing dozens more rioters in to the Capitol, and sat defiantly in the chair upon the dais of the Senate Chamber that was occupied minutes before by Vice President Mike Pence. Since his illegal activities at the Capitol, the defendant has destroyed evidence of those crimes, made plans to evade law enforcement, and continued planning "ultra-secret" "future operations" with associates in California.

For the reasons fully discussed below, the government opposes the defendant's motion for review of the bond decision, ECF No. 9, and urges this Court to uphold the decision by the Magistrate Judge in the Central District of California granting the government's motion to detain the defendant pending resolution of the instant criminal case.   In support thereof, the government states the following:

1

## I.    **BACKGROUND**

### A.    Statement of Facts

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened in the United States Capitol building ("the Capitol") to certify the vote of the Electoral College of the 2020 U.S. Presidential Election ("Electoral College vote"). The United States Capitol is secured 24 hours a day by United States Capitol Police ("Capitol Police"). The Capitol Police maintain permanent and temporary barriers to restrict access to the Capitol exterior, and only authorized individuals with appropriate identification are allowed inside the Capitol building. The entire Capitol complex—including the Capitol building, the Capitol Visitor Center, and Capitol grounds to include the entire exterior plaza—was barricaded and off limits to the public on January 6, 2021.

On January 6, 2021, at approximately 1:00 p.m., Vice President Michael R. Pence, in his constitutional duty as President of the Senate, presided over the Joint Session. Vice-President-Elect Kamala D. Harris, in her role as a Senator representing the State of California, was also present. A large crowd began to gather outside the Capitol perimeter as the Joint Session got underway. Crowd members eventually forced their way through, up, and over Capitol Police barricades and advanced to the building's exterior façade. Capitol Police officers attempted to maintain order and stop the crowd from entering the Capitol building, to which the doors and windows were locked or otherwise secured. Nonetheless, shortly after 2:00 p.m., crowd members forced entry into the Capitol building by breaking windows, ramming open doors, and assaulting Capitol Police officers. Other crowd members encouraged and otherwise assisted the forced entry. The crowd was not lawfully authorized to enter or remain inside the Capitol, and no crowd member

submitted to security screenings or weapons checks by Capitol Police or other security officials.

Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate (including Vice President Pence and Vice-President Elect Harris)—who had withdrawn to separate chambers to resolve an objection—were evacuated from their respective chambers. The Joint Session and the entire official proceeding of the Congress was halted while Capitol Police and other law enforcement officers worked to restore order and clear the Capitol of the unlawful occupants.

Later that night, law enforcement regained control of the Capitol. At approximately 8:00 p.m., the Joint Session reconvened, presided over by Vice President Pence, and attended by Vice-President-Elect Harris, both of whom had remained within the Capitol building throughout these events.

In the course of these events, approximately 81 members of the Capitol Police and 58 members of the Metropolitan Police Department were assaulted. Additionally, one subject was shot and killed while attempting to enter the House chamber through broken windows; many media members were assaulted and had cameras and other news gathering equipment destroyed; and the Capitol suffered millions of dollars in damage—including broken windows and doors, graffiti, and residue of various pepper sprays, tear gas, and fire extinguishers deployed both by crowd members who stormed the Capitol and by Capitol Police officers trying to restore order.

Between approximately January 17 and January 22, 2021, the FBI reviewed media sent to the FBI media submission portal and FBI tipline for the U.S. Capitol Incident from multiple individual tipsters who identified the defendant, Christian Secor, as a person who illegally entered the U.S. Capitol building January 6, 2021.  These tipsters provided images and videos of the defendant inside the U.S. Capitol Building, both standing on the floor of the Senate chamber, and

sitting in the Chair of the Presiding Officer on the dais at the head of the Senate chamber. This seat is normally occupied by either the Vice President of the United States and President of the Senate, the President Pro Tempore, or another Senator acting as the Presiding Officer. These images were widely circulated via both mainstream news outlets and on social media platforms.

In the media submitted by individual tipsters, the defendant can be seen wearing a red Make America Great Again hat with several stickers, including a blue circle with letters AF in white writing on the bill, a black jacket, black gloves, tan pants, and a T-shirt with an adulterated American flag and the letters "IMER" visible in white writing. The defendant was also carrying a large blue flag with "America First" in white writing attached to a white pole.



 



Pictured below is self-described Groyper, Christian Secor, who also goes by "Scuffed Elliot Rodger." Here you can see him on the senate floor, carrying an "America First" flag. You can just barely see the ARCTERYX logo on his jacket. #CapitolRiots 1/



8:59 PM · Jan 15, 2021 · Twitter for iPhone

**52** Retweets   **17** Quote Tweets   **87** Likes

*1*

---

[1] The fourth image describes SECOR as a "Groyper." The Groypers are a loose network of alt right figures who are vocal supporters of white supremacist and "America First" podcaster Nick Fuentes. See "Groyper Army," https://www.adl.org/resources/backgrounders/groyper-army (last accessed March 19, 2021).

A video filmed by The New Yorker magazine, and aired on MSNBC, showed individuals on the floor of the Senate chamber during the riot. The video shows the defendant sitting in the Chair of the Presiding Officer which had been occupied by the Vice President during the Senate proceedings earlier that day. The image below is a screenshot from the video showing the defendant in the Presiding Officer's chair, with what appears to be a blue America First flag propped against the wall behind his left shoulder.[2]



The U.S. Capitol Police CCTV cameras inside of the Capitol building captured the defendant in various parts of the building on January 6, 2021, including two hallways on the House side of the building, the East Corridor near Senate offices, the Senate Gallery Southeast, the Rotunda Door Interior, and the Senate Gallery Stairs. The figures below are screenshots from

---

[2] The link to the original video can be found at https://www.newyorker.com/news/video-dept/a-reportersfootage-from-inside-the-capitol-siege. SECOR appears at approximately 4:25.

those CCTV videos. In each of these videos, the defendant appears to be wearing the same attire and carrying the same blue America First flag.













In one of the U.S. Capitol Police CCTV videos, the defendant can be seen among a group of rioters attempting to push through a doorway that is blocked by no less than three police officers, thereby impeding in the performance of their duties, and breaking through a police line. The image

below is a screen capture from that video showing the defendant and the crowd pressing against the officers as they try to keep the oncoming mob at bay.



As a result of the defendant and others pushing on the double doors, the doors opened, and dozens of additional rioters flooded into the building. The Capitol Police officers were shoved by the crowd, at times trapped between the doors and the crowd, and eventually pushed out of the way of the oncoming mob. Law enforcement's efforts to keep out the additional rioters were frustrated by the crowd inside pushing on the doors, including the defendant.

**B.     Procedural Posture**

On February 16, 2021, the Defendant was arrested on an arrest warrant issued out of the United States District Court for the District of Columbia by Magistrate Judge Zia M. Faruqui in connection with a Criminal Complaint charging the defendant with the following offenses: Obstruction of a Congressional Proceeding, in violation of 18 U.S.C. § 1512(c)(2), § 2; Civil

Disorder, in violation of 18 U.S.C. § 231(a), § 2; Assaulting, Resisting or Impeding Officers, in violation of 18 U.S.C. § 111(a)(1), § 2; Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1) and (2); and Disorderly and Disruptive Conduct on Capitol Grounds, in violation of 40 U.S.C. §5104(e)(2)(A),(B),(C),(D) and (G). A search warrant was executed on the defendant's residence, vehicle and person at the time of his arrest.

The defendant made his initial appearance that same day before Magistrate Judge John D. Early of the Central District of California. At that time, the Government made an oral motion for the defendant's detention pursuant to 18 U.S.C. § 3142(f)(2). The defendant moved for immediate release. During the hearing, the Magistrate Judge ordered the defendant held pursuant to 18 U.S.C. § 3142(f)(2), citing the nature and circumstances of the alleged offense; weapons found during the search of the defendant's home, to include a "ghost gun;" statements from witnesses about the defendant's belief he would not be caught; and the defendant had destroyed his phone after January 6. The Court also cited other activities in California tied to the defendant, including meeting with another individual the day before his arrest for an upcoming "ultra-secret operation," and toppling a monolith in the California desert.

On February 26, 2021, a grand jury indicted the defendant on a ten-count indictment, charging him with violations of 18 U.S.C. § 1512, § 2 (Obstruction of an Official Proceeding and Aiding and Abetting); 18 U.S.C. § 231, § 2 (Civil Disorder and Aiding and Abetting); 18 U.S.C. § 111, § 2 (Assaulting, Resisting or Impeding Officers); 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds); 40 U.S.C. § 5104(e)(2)(A)(Entering and Remaining on the Floor of Congress); 40 U.S.C. § 5104(e)(2)(B)(Entering and Remaining in the Gallery of Congress); 40 U.S.C. § 5104(e)(2)(C)(Entering and Remaining  in Certain Rooms in

13

the Capitol Building); 40 U.S.C. § 5104(e)(2)(D)(Disorderly Conduct in a Capitol Building) and;

40 U.S.C. § 5104(e)(2)(G)(Parading, Demonstrating or Picketing in a Capitol Building). The

defendant faces a maximum penalty of 20 years' incarceration for these offenses.

On March 15, 2021, the defense filed a motion to review the bond decision by the

magistrate judge in California. The government now opposes the defendant's request for release.

## II.   **ARGUMENT**

### A.  Legal Standard

In determining whether the defendant should be detained, the Court must consider the

following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the

evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature

and seriousness of the danger to any person or the community that would be posed by the defendant's

release. See 18 U.S.C. § 3142(g). In this case, there are no condition or combination of conditions

that will reasonably assure the safety of the community if the defendant is released, and the

government argues she must be held pending disposition in this matter.

### B.  The Bail Reform Act Factors Strongly Support Incarceration

As the Government argued in at the combined initial appearance and detention hearing, there

is no condition or combination of conditions that will reasonably assure the safety of any other person

and the community should the defendant be released. An analysis of the § 3142(g) factors supports

that argument.

#### 1.  **The Nature and Circumstances of the Offense Charged**

The particular facts of this case are uniquely disturbing. The defendant traveled from Los

Angeles, California to this jurisdiction and participated in one of the most riotous acts of

insurrection the nation's capital has ever seen. The actions of the rioters delayed the session of

Congress, which was convened to certify the results of the 2020 Presidential Election. The normal functioning of our democracy was put at risk because of the actions of the defendant and his fellow rioters.

Specifically, this defendant stood in the sacred chamber where this ordinarily quiet, but absolutely necessary, democratic function should have been occurring. He posed for photos on the Senate dais occupied minutes before by the Vice President of the United States, carrying a flag representing America First, a group headed by an activist who actively encouraged the occupation of the U.S. Capitol on January 6th.[3] The defendant aided and abetted the assault and resistance of federal law enforcement officers attempting to guard the building from further siege. By pushing with the crowd of insurrectionists that broke open the Rotunda doors for other rioters to enter the Capitol building, the defendant fueled a situation that created a danger not only to those law enforcement officers attempting to quell the riot, but to the building which stands for democracy itself. This factor strongly favors detention.

2. **The Weight of the Evidence Against the Defendant**

The evidence against the defendant is overwhelming, including photographs and videos of him participating in the offenses alleged, from him pushing on a crowd of people to breach the Rotunda door to sitting atop the Senate dais in the chair occupied minutes before by Vice President Mike Pence. This factor strongly favors detention.

3. **The History and Characteristics of the Defendant**

This factor strongly favors detention. The Pretrial Services Agency in California

---

[3] See "Far-right activist who encouraged U.S. Capitol occupation also organized 'stop the steal' rally in Michigan," https://www.mlive.com/politics/2021/01/far-right-activist-who-encouraged-us-capitol-occupation-also-organized-stop-the-steal-rally-in-michigan.html (last accessed March 18, 2021).

recommended detention based on concerns about the defendant possibly evading law enforcement and destroying evidence. See 8:21-mj-00106. The government shares those concerns. Witnesses reported to the FBI that upon returning from D.C. after to the January 6 riot, the defendant deleted his Twitter account, @fullautonat. Witnesses also reported to the FBI that the defendant had gotten rid of his cell phone after January 6, 2021, over concerns that the phone would tie him to the Capitol riot. When law enforcement executed the search warrant on the defendant's home and vehicle on the day of his arrest, they recovered the below-pictured, smashed cell phone in the defendant's vehicle. [4]



Law enforcement also recovered a new cell phone during the execution of the defendant's

---

[4] The smashed cell phone is inside a case that depicts Pepe the Frog, the symbol adopted by the "Groyper army." https://www.adl.org/resources/backgrounders/groyper-army (last accessed March 19, 2021).

arrest and search warrant of his residence. Text messages recovered from that new cell phone indicate that the defendant was deleting additional pages from the internet after January 6, 2021. The defendant also expressed a belief that it was a bad idea "to nab me" and that "it seems they don't want me," which the government believes to be a reference to law enforcement arresting the defendant for his activities on January 6.



The defendant is also a flight risk. A witness who spoke with the FBI indicated the defendant had discussed plans to flee California in the aftermath of the January 6 riot. Additionally,

the defendant appears to have access to substantial financial resources. Legal service to the defendant's checking account provider shows four deposits from "Fid Bkg Svc LLC Moneyline" between September 2020 and December 2020 totaling more $15,000 dollars. An open source search suggests these are deposits from a Fidelity brokerage account. There are also seven Bank of America funds transfers between June 2020 and November 2020, totaling more than $6,000. Additionally, there are 29 deposits in smaller amounts throughout 2020, totaling more than $8,200, which were transferred to the defendant from Paypal accounts.[5] Finally, there are eight unattributed cash deposits, totaling more than $4,000. According to the Pretrial Services Report, the defendant is unemployed, so these deposits are unlikely from any employer. Access to such substantial financial resources, without any employer tying him to the community, could give the defendant the means and opportunity to flee from law enforcement.

Finally, one of the defense's primary arguments for release is a plea to this Court to let the defendant finish his final college exams, scheduled to occur this week. See ECF No. 9, at 3 and 7. However, the government has confirmed that this is no longer an option for the defendant.

### 4. The Nature and Seriousness of the Danger to Any Person or the Community

Finally, the fourth factor, the nature and seriousness of any danger to the community, strongly favors detention. Upon execution of the search warrant of the defendant's residence and vehicle on February 16, 2021, law enforcement found three knives and a baton in the defendant's vehicle, mace and body armor plates in the defendant's bedroom, and a privately manufactured "ghost gun" in a gun safe in the house.[6] The defendant has one legally-registered .22 caliber rifle

---

[5] Both the defendant's checking account and credit card account show dozens of purchases made through Paypal and eBay that the government has yet to attribute to specific retailers.
[6] This safe was not located within the defendant's bedroom in the home, and the defendant lives with his mother. The mother disclaimed any ownership over the firearm.

in his name. But a ghost gun, by its nature, cannot be legally registered with state authorities because there is no gun dealer to register the purchase and no serial number to track the firearm. Additionally, video recovered from a Go-Pro camera recovered in the search of the premises shows the defendant in possession of an AR-style rifle, pointing the weapon inside his residence while wearing a tactical helmet. [7] This firearm was not found in the home when the search was conducted, nor is there an AR-style rifle legally registered to the defendant.



---

[7] The date and time stamp on this video indicate it was taken on January 5, 2018, at 10:26 p.m. However, conditions outside indicate this timestamp is probably incorrect, given the sunlight still present.



At the time of arrest, law enforcement recovered the defendant's wallet, which contained credit and debit cards. Subpoena returns for one of those credit card accounts show the defendant is the owner of the card, and over the course of twelve months between December 2019 and November 2020, the card was used to make at least 20 purchases from firearms and military tactical gear retailers. The purchases totaled more than $3,300. Given that the defendant has only one registered firearm, and clearly has access to at least one additional unregistered AR-style rifle and possibly other firearms due to his many purchases from firearms retailers, the government has grave concerns about the defendant's access to weapons that are not registered to him should he be released.

Equally concerning are messages recovered from the defendant's new cell phone, showing that the defendant and an associate were planning "ultra secret" "future operations" the night before the defendant was arrested for the instant offense. An FBI surveillance team followed the

defendant to the location mentioned in this exchange, shown below, on the evening of February 15, 2021.



It bears repeating that the defendant was an active participant in the most violent insurrection to occur at the U.S. Capitol in over 200 years. Specifically, this defendant was part of a group of rioters who aggressively thwarted the efforts of law enforcement officers trying to protect the seat of the federal government. And upon his return to California, the defendant attempted to destroy evidence of his crimes, discussed plans to flee the jurisdiction with witnesses, and continued to plan ultra-secret "operations" while having ready access to firearms and other weapons. He is a danger to the continued operation of the federal government, the law enforcement officers dedicated to protecting that government, and to the community at large.

21

An analysis of the factors under 18 U.S.C. § 3142(g) demonstrates that the Defendant should remain detained pending trial. As a result, the government urges the Court to deny the defendant's motion for release.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY


___/s/_____
KIMBERLY  L. PASCHALL
Assistant United States Attorney
D.C. Bar 1015665
U.S. Attorney's Office
555 4th Street, N.W., Room 4116
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing opposition to the motion for release has been served upon defense counsel, Brandi Harden, by email and ECF/PACER notification, on this day, March 19, 2021.


___/s/_____
KIMBERLY  L. PASCHALL
Assistant United States Attorney