UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-CR-157 (TNM) |
| v. : | |
| : | |
| CHRISTIAN SECOR, : | |
| : | |
| Defendant. : | |

**UNITED STATES' MEMORANDUM
REGARDING STATUS OF DISCOVERY AS OF JANUARY 21, 2022**

The United States files this memorandum for the purpose of describing the status of implementation of our discovery plan in relation to voluminous sets of data that the government collected and continues to collect in its investigation of the Capitol Breach cases, among which may be interspersed information the defense may consider material or exculpatory. This memorandum will address: 1) materials produced since the last memorandum on (dated as of November 5, 2021); 2) steps taken by the government to provide defense counsel and incarcerated defendants with discovery; and 3) near future production with projections for substantial completion of discoverable materials.

**Status of Production of Video Footage to Defense Evidence.com**

Since our last status memorandum dated as of November 5, 2021, the following video footage has been shared to the defense instance of evidence.com and is accessible to any Capitol Breach defense counsel who requests a license from the Federal Public Defender ("FPD"):

- 1,063 files consisting of approximately 714 hours of body-worn-camera ("BWC") footage recorded by 675 Metropolitan Police Department ("MPD") officers.

At this juncture, over 24,000 files consisting of U.S. Capitol Police ("USCP") Closed Circuit Video ("CCV"), BWC and U.S. Secret Service ("USSS") surveillance footage have been made available to the defense instance of evidence.com.

Notably, over the course of recent and prior productions, and solely to assist Capitol Breach defense teams in identifying video files they may consider relevant in specific cases, we have also produced the following tools, all of which comprise substantial government work product:

- MPD Radio Global Positioning Satellite ("GPS") Spreadsheet:  The Discovery Team learned that radios provided to MPD officers by the D.C. Office of Unified Communications ("OUC") provide GPS location data when four or more satellites are visible to the radio.  Under these circumstances, the data is transmitted: (1) every ten minutes; (2) when there is an emergency activation on the radio; and (3) each time an officer pushes the button to talk over the radio. The Discovery Team obtained MPD radio GPS records for January 6, 2021 and created a spreadsheet of data that may be plotted on a time-scaled map using commercially available GPS mapping software.  In many instances, the subscriber alias for a radio is an individual officer's Computer Aided Dispatch ("CAD") number and last name. Since MPD BWC footage in evidence.com is also frequently saved under an officer's CAD number and name, a particular officer's radio location information can be used to search for BWC footage from the same time and location in evidence.com.

- BWC Summary Spreadsheet and related zone maps:  This 752-page spreadsheet was initially created by over sixty individuals as an investigative tool to assist prosecutors in locating relevant BWC footage from responding law enforcement agencies including MPD, Montgomery County Police Department, and Fairfax County Police Department.  With respect to over 2,800 BWC video files, the spreadsheet provides: (1) the name and CAD number of the officer associated with the video, (2) the video start time, (3) a short summary of notable events observed by the reviewer including potential crimes observed and the time the camera appears to enter the Capitol, if any; and (4) the apparent location of the camera between noon and midnight, using 15-minute periods of duration.  The locations identified correspond to zone maps that section the interior of the Capitol, the Lower West Terrace, and the Capitol Grounds into smaller areas.

- USSS video spreadsheet:  The Discovery Team created a spreadsheet containing the filenames/titles, starting times, video length, and date of USSS video.

- 15 camera maps of the interior of Capitol Visitor's Center and the interior of the Capitol, and one camera map of the Capitol grounds.  The maps depict the general location of the cameras that are identified by unique number in each USCP CCV video filename.

- USCP Timeline of Events for January 6, 2021 Attack.

## Status of Access to Evidence.com by
## Inmates in the Custody of the D.C. Department of Corrections

Through a collaboration between the government, the Federal Public Defender ("FPD"), American Prison Data Systems ("APDS")(the vendor of the educational tablets accessible to inmates in the D.C. Department of Corrections ("DOC")), and Axon Enterprise, Inc. ("Axon"), a separate, stand-alone instance of evidence.com has been created to allow in-custody defendants to view video footage. This DOC instance of evidence.com is a mirror image of the defense instance of evidence.com which will enable inmates to have direct access to the voluminous video footage that has been provided in discovery via evidence.com.

The government and FPD are collaborating to draft legal/technical documentation that clearly outlines the roles, responsibilities, and rules applicable to the DOC instance. For example, we expect the final documentation to establish rules including:

- The database will be administered by FPD. DOC, APDS and DOJ will not have access to audit trails of accessed videos.
- Only inmates who have agreed to abide by the protective order and signed attachment A (or been subject to an equivalent judicial admonishment) will get access.
- The only evidence that inmates will have access to in the DOC instance of evidence.com will be the content that the government has shared to that instance.
- The permissions will be set so that inmates can search, filter, and view files, but cannot share the files with others outside of the system.
- If videos are discovered to have somehow been disseminated without proper authorization, the government may seek a Court order requiring FPD to turn over any relevant audit logs regarding activity.

We have made substantial progress in drafting this documentation and expect that inmates who have complied with the protective order requirement listed above will soon have access.

## Status of Production of Documents

Global productions made via USAfx since November 5, 2021 (Nos. 8, 9, and 10) have continued to focus on materials most highly requested by defendants and include items such as:

- 2 new USCP Office of Professional Responsibility ("OPR") reports and 16 associated exhibits
- 37 additional exhibits to previously produced USCP OPR reports
- 162 USCP Use of Force reports and exhibits
- A collection of MPD Use of Force reports and exhibits
- 65 video files recorded by MPD's Electronic Surveillance Unit and 6 related reports
- 10 video files of footage from the Senate floor from the Senate Recording Studio
- 10 video files of footage from the House floor from the House Recording Studio
- 64 audio recordings of Virginia State Police radio communications
- 752-page BWC spreadsheet and related zone maps (described above)
- USCP timeline of events (described above)

These materials are substantial in nature. For example, in addition to 65 video files from MPD's Electronic Surveillance Unit, the exhibits to the recently provided USCP OPR and MPD use of force reports described above include approximately 94 audio-recorded interviews of officers and witnesses (35 USCP OPR interviews and 59 MPD use of force interviews).

**Status of the Defense Relativity Workspace**

On Friday, January 21, 2022, FPD circulated instructions to defense attorneys on how to gain access to Relativity. Since the Relativity database is in a FedRAMP, secure environment, completing the process for obtaining access is time consuming and requires a number of steps, both for the defense and for the Deloitte team. Thus, attorneys should plan for the process to take between four (4) to five (5) business days from when they first submit their FPD Relativity License Request Form to when they will be able to access the Relativity database. Depending on the number of simultaneous requests, it could take even more time.

Once such access is widely offered, the primary method by which the Capitol Breach Discovery Team will provide global discovery is through a production directly to the defense database. We will generally discontinue the practice of making voluminous productions via USAfx, as that file transfer system is not an optimal or in many cases even a workable manner of

4

transferring large volumes of documents.  Of course, we will continue to issue discovery letters with indexes that describe the materials that have been added to the defense database.

At this juncture, the defense Relativity workspace contains Global Productions 8, 9, and 10, and portions of Global Production No. 2 (all of which were already made accessible to defense teams via USAfx).  FPD and its vendor are using the files produced to create standard views, layouts, and coding panes to optimize defense attorney review of the voluminous documents we ultimately will provide. The government's litigation support project managers have spent substantial time guiding FPD through the datasets provided and making recommendations and suggestions to facilitate review of the data by defense counsel.

Using a defense Relativity workspace for materials produced by the government in discovery will have several benefits for defense teams, including but not limited to avoiding any challenges they may have experienced having to download large productions from USAfx before reviewing any of the files.  Counsel will no longer need to download productions to review them, as the materials will already be in the database available for review, having been directly transferred from the government's database.  Counsel may, of course, search, review and download those files they deem necessary.[1]  Additional benefits will include the ability to perform keyword searches across all materials in the database, including searches of audio and video that has been "machine" transcribed.  Also, within the database, materials will be organized in "families," so even if they were provided over the course of several discovery productions, the materials will be connected for reviewing purposes.  Notably, many of the materials we will be providing, such as results of searches of other defendants' devices and

---

[1] USAfx and Relativity are not the same type of tool. USAfx is for file transfer, whereas Relativity is an online search and review database.

Stored Communication Act accounts, would likely be of little value if provided in any other manner. In addition to the fact that they would likely exceed the capacity of our file transfer system and thus require an enormous number of storage devices to be provided in every single case, there would be no way to search the contents universally.

### Status of Access to Relativity by Inmates in the Custody of the D.C. Department of Corrections

We continue to collaborate with FPD and DOC about with respect to the creation of an e-discovery room in the Correctional Treatment Facility in which inmates can access materials located in Relativity. The implementation of this solution has met with some delays recently, in part due to the need to identify in-person staff during a COVID-19 surge, while a medical stay-in-place continues at the DOC, and particularly when most inmates in Capitol Breach cases are on quarantine.

### Status of Access to Laptops Through DOC's E-Discovery Program

Recently, the ability of the DOC to intake e-discovery and assign out laptops to inmates has slowed, due to medical leave of the staff assigned to the administration of the e-discovery program, and COVID-based limitations on the number of days non-essential employees may work in-person. That being said, the waitlist is still fairly short, and based on discussions with the DOC, the DOC is actively focused on improving the speed of process notwithstanding these new challenges.

### Substantial Completion of Discovery

The government expects to have another status update for the Court on February 4, 2022. The government is presently surging its discovery review capacity, including bringing in and training additional individuals to dedicate time to this endeavor, and we hope to make substantial headway in the next two weeks that will help answer this bottom-line question.

## Conclusion

In sum, we have made substantial progress in our effort to provide the defense comparable discovery review platforms for both documents and digital media, to populate those platforms, and to use alternative means to provide the most relevant discovery without delay. We will diligently continue to transfer data to our vendors, process it for production, and make interim productions by other means until the defense platforms are fully accessible. As we continue to implement our plan, we will continue to file status memoranda with the Court on a regular basis.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:  /s/ *Emily A. Miller*
EMILY A. MILLER
Capitol Breach Discovery Coordinator
DC Bar No. 462077
555 Fourth Street, N.W., Room 5826
Washington, DC 20530
Emily.Miller2@usdoj.gov
(202) 252-6988

By:  /s/ *Kimberly L. Paschall*
KIMBERLY L. PASCHALL
Assistant United States Attorney
Federal Major Crimes Section
D.C. Bar No. 1015665
555 4th Street, N.W.,
Washington, D.C. 20530
202-252-2650
Kimberly.paschall@usdoj.gov