UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Case. No. 21-cr-157 (TNM) |
| **CHRISTIAN ALEXANDER SECOR** | ) ) )` | |
| **Defendant.** | ) ) | |

## MOTION FOR RELIEF UNDER 18 U.S.C. § 3582(c)(2) BASED ON AMENDMENT 821 TO THE GUIDELINES MANUAL

Christian Alexander Secor, by and through undersigned counsel, respectfully moves this Honorable Court to reduce his term of imprisonment to 30 months due to a retroactively applicable amendment to the U.S. Sentencing Guidelines impacting "zero-point offenders." *See* Amend. 821 (Part B), U.S.S.C. (eff. Nov. 1, 2023).[1] Mr. Secor is eligible for relief under Amendment 821, which has the effect of reducing his applicable guideline range. Furthermore, a reduction in his term of incarceration is consistent with the § 3553(a) factors and the applicable policy statement in U.S.S.G. § 1B1.10. The government has indicated that it will oppose this motion.

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

On May 19, 2022, Mr. Secor pleaded guilty to Count One of the Superseding Indictment: Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). (Dkt. 42 at 1).

On October 19, 2022, this Court held a sentencing hearing. (Sentencing Tr., Dkt. 56). While sentencing Mr. Secor, the Court made oral rulings on various objections to the Presentence

---

[1] Available at https://www.ussc.gov/guidelines/amendment/821.

1

Investigation Report ("PSR") concerning the applicable sentencing guidelines and discussed the 18 U.S.C. § 3553(a) factors as applied to Mr. Secor.  Relevant to the instant motion, some of the Court's sentencing rulings are cited here:

1) The Court accepted the facts as stated in the presentence report.  (Sentencing Tr. at 5:14-17).

2) In line with the parties' plea agreement, the Court determined that the base offense level was 14 pursuant to U.S.S.G. § 2J1.2(a).  (Sentencing Tr. at 5:23-6:1; Dkt. 42 at 2).  The parties also agreed that (a) a two-level enhancement for obstruction (destruction of evidence) applied; and (b) as did a three-level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility and timely notification of the plea agreement.  (Sentencing Tr. at 6:14-7:3; Dkt. 42 at 2-3).

3) The Court rejected the PSR's inclusion of two additional sentencing enhancements: an 8-level enhancement where "the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice," U.S.S.G. § 2J1.2(b)(1)(B), and a 3-level enhancement where "the offense resulted in substantial interference with the administration of justice," *id.* § 2J1.2(b)(2).  (Sentencing Tr. at 17:22-24; PSR ¶¶ 48-49).  In short, the Court concluded that the phrase "administration of justice" in both enhancements "relates to the judicial system," rather than "a political proceeding" like "the certification of the electoral vote[,]" which "involve[es] a different branch of government with no nexus at all to the judicial process."  (Sentencing Tr. at 19:1-20:3).[2]

---

[2] The D.C. Circuit recently affirmed this conclusion in *United States v. Brock*, No. 23-3045, 2024 WL 875795 (D.C. Cir. Mar. 1, 2024), holding that "Section 2J1.2's text, commentary, and context establish that the 'administration of justice' does not extend to Congress's counting and certification of electoral college votes." *Id.* at *15.

4) Because of its holding on the phrase "administration of justice," the Court declined "to rule on the question of whether . . . Mr. Secor's conduct showed that he caused or threatened to cause physical injury to any person or property damage" to qualify under the 8-level enhancement. (Sentencing Tr. at 17:25-18:3). The Court did comment on the issue, however, stating that "I don't hear the government suggesting there was property damage that would justify the 8-point enhancement. I think they're relying on not him causing physical injury either but the potential for physical harm based on the blocked door by the police officers." (*Id.* at 18:3-7). The Court called this question "a relatively close call." (*Id.* at 18:7-8). Later during the sentencing colloquy, however, the Court found that Mr. Secor's actions on January 6 "d[id] not involve actual violence against law enforcement," *id.* at 49:17-18, and that, after "careful[] review[ of] the video footage of" the incident at the door, there was no "evidence that [Mr. Secor] personally injured or threatened to injure anyone," *id.* at 48:2-4.

5) Ultimately, the Court calculated Mr. Secor's Total Offense Level as 13. (Sentencing Tr. at 20:4-5). Everyone agreed that Mr. Secor had zero criminal history points, placing him in Criminal History Category I. (Sentencing Tr. at 7:5-7; Dkt. 42 at 3; PSR ¶ 60). The resulting Guidelines range was 12-18 months. (Sentencing Tr. at 20:4-5). The Court varied upwards to 42 months' incarceration, to be followed by a 3-year term of supervised release. (Sentencing Tr. at 54:19-23; Dkt. 57 at 2-3).

At sentencing, the Court allowed Mr. Secor to self-surrender. (Sentencing Tr. at 58:15-16). He presently is incarcerated at FCI Terminal Island in San Pedro, CA. As of this writing, his projected release date is April 1, 2025, per the Bureau of Prisons' Inmate Locator feature at https://www.bop.gov/inmateloc/.

## II. APPLICABLE LEGAL STANDARDS

Effective November 1, 2023, the United States Sentencing Commission created a new guideline provision relating to criminal history at U.S.S.G. § 4C1.1, Adjustment for Certain Zero-Point Offenders. Section 4C1.1 provides for a two-level decrease from the offense level for defendants who (1) "did not receive any criminal history points from Chapter Four, Part A" and (2) are not excluded under a list of criteria. U.S.S.G. § 4C1.1(a); United States Sentencing Commission, *Amendments to the Sentencing Guidelines* (Apr. 27, 2023), at 87-88 (Part B, Subpart 1).[3] On August 31, 2023, implementing the directive of 28 U.S.C. § 994(u), the Sentencing Commission determined that the new § 4C1.1 would apply retroactively to defendants serving terms of imprisonment. *See* United States Sentencing Commission, *Amendment to the Sentencing Guidelines* at 1 (Aug. 31, 2023).[4]

18 U.S.C. § 3582(c)(2) provides that defendants serving terms of imprisonment may receive sentence reductions pursuant to retroactive amendments to the Sentencing Guidelines:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

In turn, U.S.S.G. § 1B1.10 – the applicable policy statement – provides that:

---

[3] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.

[4] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf.

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).

U.S.S.G. § 1B1.10.  Section 1B1.10 further provides that, except under certain circumstances, a court may not reduce a person's sentence "to a term that is less than the minimum of the amended guideline range," and "[i]n no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served."  U.S.S.G. § 1B1.10(b)(2).

Courts evaluate motions under 18 U.S.C. § 3582(c)(2) in two steps.  *See United States v. Bauer*, No. 121CR003862TNM, 2024 WL 324234, at *2 (D.D.C. Jan. 29, 2024).  "First, the Court determined whether the defendant is eligible for a reduced sentence and, if so, calculates the amended Guidelines range."  *Id.* (citing *Dillon v. United States*, 560 U.S. 817, 826-27 (2010)).  "Second, the Court must 'consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.'"  *Id.* (quoting *Dillon*, 560 U.S. at 827).

### A.  Mr. Secor is Eligible for the Zero-Point Offender Adjustment

Mr. Secor is eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and § 1B1.10(b)(2) because his sentence was based on a Guideline range that was subsequently lowered by the Sentencing Commission under a retroactive provision of Amendment 821.  *See* U.S.S.G. § 1B1.10(d) (listing Amendment 821, part B, subpart 1).  Applying the new § 4C1.1 adjustment, Mr. Secor's offense level is decreased by two levels because he did not receive any criminal history points and otherwise meets the criteria listed in the Guideline.  Thus, his offense

level drops from 13 to 11, lowering his Guidelines range from 12-18 months to 8-14 months. (*See* Sentencing Tr. at 20:4-5).

One of the requirements for the two-level reduction under §4C1.1 is that "the defendant did not use violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(3). Contrary to what the government may argue in opposition, Mr. Secor did not use violence or credible threats of violence in connection with his offense, and he is eligible for the two-level reduction afforded by Amendment 821 for zero-point offenders.[5]

The Sentencing Guidelines Manual itself does not define the term "use violence or credible threats of violence" within § 4C1.1 or its commentary. And when no definitions are provided, courts look to dictionary definitions to determine meaning. *See, e.g.*, *Kaufman v. Nielsen,* 896 F.3d 475, 485-87 (D.C. Cir. 2018). This Court recently issued an opinion discussing dictionary definitions of violence in the context of § 4C1.1(a)(3) and found that that "violence" is: "'[t]he use of physical force, typically 'accompanied by fury, vehemence, or outrage,' and 'unlawfully exercised with the intent to harm'" or "the 'exertion of any physical force so as to injure or abuse.'" *Bauer*, 2024 WL 324234, at *2 (quoting *Violence*, Black's Law Dictionary (11th ed. 2019), and *Violence*, Webster's Third New International Dictionary (1993), respectively); *see also United States v. Yang*, No. 23-cr-100 (JDB), 2024 WL 519962, at *4 (D.D.C. Feb. 9, 2024) (similar); *United States v. Kelly*, No. 21-cr-708 (RCL), 2024 WL 756642, at *7 (D.D.C. Feb. 23, 2024) (similar).

---

[5] The government has stated that it intends to "argue that [Mr. Secor] is not eligible, based on his conduct, for application of the 4C1.1 criteria, and in the alternative, that his conduct does not merit a sentence reduction under the 3553 factors."

6

Recent opinions from this district applying § 4C1.1 in January 6 cases elucidate what types actions constitute "violence," and which do not.  On the non-violent end of the spectrum, for example, is Judge Bates's opinion in *Yang*.  There, Mr. Yang, a January 6 defendant, "stood near the front of the crowd close to the police line" in the Rotunda.  *Yang*, 2024 WL 519962, at *1.  And while his "body language was generally nonconfrontational," Mr. Yang did "make physical contact with officers twice."  *Id.*  First, "[w]hen a scuffle broke out nearby, officers surged forward and Yang briefly grabbed an officer's wrist."  *Id.*  Second, "[w]hen an officer approached from the side and pushed Miller[, another member of the crowd,] firmly with a baton, Yang," who was holding Miller, "briefly grabbed the baton as Miller fell backward."  *Id.*

Judge Bates concluded that Mr. Yang's actions did not constitute "violence" within the meaning of § 4C1.1.  *Id.* at *4.  While Mr. Yang may have used physical force in that "he briefly made physical contact with two officers, the Court f[ound] that this contact was not made with an intent to harm."  *Id.*  "Nor was this contact accompanied by 'fury, vehemence, or outrage,' or the like."  *Id.*  As the Court explained, "[t]he throughline of the definitions of 'violence' is a degree of aggressiveness that [wa]s not present in th[at] case."  *Id.*  And, even though Mr. Yang was "near the front of the crowd opposing the line of officers," and twice made physical contact with officers, the Court concluded that "Yang did not act with the degree of aggression necessary to fairly characterize his actions as 'violence.'"  *Id.*

This Court's recent opinion in *Bauer*, by contrast, addressed a defendant whose behavior did reach a disqualifying degree of "violence" under § 4C1.1(a)(3).  Ms. Bauer "shoved Officer Travis Coley and yelled, 'You back up!  Don't even try,' when he tried to move her and other rioters away."  2024 WL 324234, at *1.  "When he told her to back up, she pushed back against his baton, using both hands and told him to back up."  *Id.*  The Court called this physical contact

"aggressive[]" and concluded that "Bauer's vehement tone and abusive language emphasized the seriousness of her physical actions against" the officer; indeed, Bauer's companion "had to restrain Bauer from further interacting with Officer Coley." *Id.* at *3. Accordingly, the Court held that "Bauer's use [of force] was not 'slight[; r]ather, she used force accompanied by fury and vehemence with the intent to harm or abuse Officer Coley." *Id.*[6]

When placed on this spectrum, Mr. Secor's actions on January 6 were nonviolent. According to the PSR, Mr. Secor entered the Capitol through the Senate Wing door at 2:26 p.m. (PSR ¶ 30). He left the Capitol at 2:51 p.m. (PSR ¶ 35). As described in his sentencing memorandum, "Mr. Secor did not participate in the forceful breaching of the outer barricades, nor did he participate in the breaking or smashing of windows inside of the U.S. Capitol." Dkt. 51 at 9. Rather, "Mr. Secor's conduct that day consisted of him unlawfully assembling at the U.S. Capitol, walking through an already breached door, wandering through the building, and taking photos with an America's First flag." *Id.* And, as this Court recognized at sentencing, Mr. Secor's actions on January 6 "d[id] not involve actual violence against law enforcement." Sentencing Tr. at 49:17-18.

In opposition, the government may point to the moment Mr. Secor was at the East Rotunda doors. According to the PSR,

> Once at the East Rotunda doors, at approximately 2:38 p.m., the defendant helped a group of rioters inside the building push open those doors, which were being guarded by three US Capitol Police officers. The group of approximately 25 rioters threw their weight against the doors, which the defendant joined by bracing his body against the backs of other rioters as they pushed. In the process, the crowd trapped the three US Capitol Police officers against the doors. The

---

[6] Furthermore, the Court held that "Bauer made credible threats of violence against members of Congress, including Speaker Pelosi," further excluding her from benefiting under § 4C1.1. 2024 WL 324234, at *3.

    rioters ultimately overpowered the officers, and the defendant and fellow rioters
    assisted those on the outside of the US Capitol enter the building.

(PSR ¶ 31).

    As government's Exhibit 8 shows, Mr. Secor was not present when other rioters removed the benches securing those doors. By the time Mr. Secor is on video (approximately 00:38), over thirty other rioters are in the area around the doors. Over the next minute or so, the group moves closer the doors, while Mr. Secor hangs back off to the left of the screen. Then, around 1:43, Mr. Secor gets closer to the rioters near the door. At this time, the larger group starts leaning their body weight on each other to push open the doors. Mr. Secor, who is toward the back of this group, likewise leans his body on other rioters in front of him. This incident lasts about 17 seconds. At approximately 2:30, Mr. Secor rejoins the crowd near the doors. In front of him, several rioters assault a police officer (2:45). Mr. Secor does not engage in that altercation, backs away, and removes himself from this scene. Mr. Secor exits the screen around 3:23.

    That moment at the doors falls far short of the use of "force accompanied by fury and vehemence with the intent to harm" that this Court identified as "violence" in *Bauer*. 2024 WL 324234, at *3. Mr. Secor briefly used his body weight with the apparent goal of opening the doors to allow others inside the Capitol. There is no indication that he did so with the intent to harm anyone, including the officers guarding the doors. In fact, when several rioters immediately in front of him began physically assaulting an officer, Mr. Secor quickly left that scene without participating. When compared with Ms. Bauer's direct push of an officer—and even with Mr. Yang's physical interactions with an officer, which Judge Bates held were insufficient—Mr. Secor's conduct is not "violent" within the meaning of § 4C1.1(a)(3). Indeed, this Court has already agreed, stating at sentencing: "I have carefully reviewed the video footage

9

of that incident. I don't believe there's any evidence that you personally injured or threatened to injure anyone." Sentencing Tr. at 48:2-4.

That Mr. Secor did not engage in any violence or threaten violence on January 6 should end the question of his eligibility under § 4C1.1. In other January 6 cases where the defendant did not personally engage in violence, however, the government has resisted application of the reduction on the theory that every participant contributed to the violence on January 6, and so § 4C1.1 ought not apply in any January 6 case regardless of the defendant's individual conduct. *See, e.g.*, *Yang*, 2024 WL 519962, at *4. This Court correctly rejected that argument in *Bauer*, holding that courts must "evaluate with particularity whether the defendant used violence or made credible threats of violence[;] [i]t cannot simply impute the 'use of violence' to a defendant based on the actions of others." 2024 WL 324234, at *4; *see also Yang*, 2024 WL 519962, at *4 ("But it does not follow that the Court can disregard the inherently individualized analysis contemplated by § 4C1.1 in general and by the plain text of § 4C1.1(a)(3) in particular."). Numerous courts in this district have followed suit, "declin[ing] to adopt the Government's broad guilt-by-association interpretation of § 4C1.1." *Bauer*, 2024 WL 324234, at *4; *see also Yang*, 2024 WL 519962, at *5 (noting that the Court "joins the view of at least six other judges in this District," in "reject[ing] the government's violence-by-presence theory of § 4C1.1(a)(3)").

      **B.**     **A reduction in sentence is consistent with U.S.S.G. § 1B1.10 and the relevant 18 U.S.C. § 3553(a) factors.**

Mr. Secor respectfully requests that this Court exercise its discretion to reduce his sentence from 42 months' imprisonment to 30 months' imprisonment. This reduction would be in keeping

with how this Court sentenced Mr. Secor originally.[7] Furthermore, the reduction sought is consistent with U.S.S.G. § 1B1.10 and the relevant 18 U.S.C. § 3553(a) factors. The reduction is modest and yields a sentence that is sufficient to meet the goals of sentencing in this case.

First, the proposed reduction is consistent with the need to protect the public from future crimes. In promulgating Amendment 821's provisions applicable to zero-point offenders like Mr. Secor, the Commission relied on studies of recidivism among federal offenders which found that "offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point." United States Sentencing Commission, *Amendments to the Sentencing Guidelines* (Apr. 27, 2023), at 79[8]; *see also* United States Sentencing Commission, *Recidivism of Federal Offenders Released in 2010* (Sept. 2021), at 26 ("[O]ffenders with zero criminal history points had the lowest rearrest rates.")[9]. Furthermore, this Court also sentenced Mr. Secor to thirty-six months of supervised release, Dkt. 57 at 3, ensuring that Mr. Secor will be under supervision well past the 2024 presidential election.

Second, in considering whether and to what degree a sentence reduction is warranted under Amendment 821, "[t]he court may consider post-sentencing conduct of the defendant that occurred

---

[7] Mr. Secor's original Guidelines range was 12-18 months. The midpoint of the original range is 15 ((12+18) / 2 = 15)). The new range is 8-14 months. The midpoint of that range is 11 ((8+14) / 2 = 11)). To find where the Court's original 42-month sentence corresponds to the new range, unfortunately a little math is involved (and undersigned counsel is no expert, but has tried). To find the proportion, we take the original midpoint / original value = new midpoint / new value. So, 15/42 = 11/x (where x is the new value in the updated range). Solving for x involves cross multiplying 15 * x = (42 * 11) / 15. Accordingly, the new value is 30.8 (i.e., 30/31 months' imprisonment).

[8] Available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf.

[9] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf.

11

after imposition of the term of imprisonment." U.S.S.G. § 1B1.10 app. n.1(B)(iii).  Mr. Secor's post-sentencing conduct weighs in favor of reducing his sentence.  Most importantly, Mr. Secor has a nearly unblemished disciplinary record from his period of incarceration, which began in November 2022.[10]  It is clear thar Mr. Secor has used his time in prison in a positive manner.  For example, Mr. Secor is currently assigned to the "Wellness Rec Yard" detail at FCI Terminal Island.  He received this job assignment in January 2024.  In this role, Mr. Secor works in the gym cleaning and arranging weights.  He has also worked in the kitchen.  In his free time, Mr. Secor has been reading, working out, and studying Latin.  His exceptional behavior is consistent with the proposition that he is at a low risk of recidivism once released.

Third, at the time of Mr. Secor's sentencing in October 2022, far fewer January 6 defendants had been sentenced as there have been by today's date.  Thus, there are more cases and sentences to consider under 18 U.S.C. § 3553(a)(6), the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.  While no two January 6 cases are the same, counsel has endeavored to find defendants who, like Mr. Secor, had little or no criminal history and were found guilty of 18 U.S.C. § 1512(c)(2) (obstruction of an official proceeding).  The sentences in the cases below reflect that Mr. Secor's request of a reduction to 31 months is more than appropriate.

In *United States v. Judd*, No. 21-cr-40 (TNM), this Court sentenced Mr. Judd to **32 months'** incarceration.  Following a stipulated trial, Mr. Judd was found guilty of § 1512(c)(2), as well as 18 U.S.C. § 111(a)(1) (assaulting, resisting, or impeding certain officers).  (Dkt. 527 at 18).[11]  Like

---

[10] *See*, Exhibit A. Mr. Secor's BOP records show he has no disciplinary history whatsoever; and only one very minor infraction for being in his unit while it was being cleaned.

[11] Docket citations in this section are to the case numbers discussed in each paragraph.

Mr. Secor, Mr. Judd was convicted under § 1512(c)(2) and had no criminal history. (Dkt. 529 at 12). Unlike Mr. Secor, however, Mr. Judd's behavior was violent. For example, Mr. Judd participated in a heave-ho against a police line in the tunnel against officers, and he also lit a firecracker-like object and threw it at the police line in the tunnel. (Dkt. 527 at 6-9). Accordingly, Mr. Judd also had an assault conviction. Mr. Judd also was significantly older than Mr. Secor on January 6. (Dkt. 529 at 12). Mr. Secor was only 22 years old.

In *United States v. Hunter Seefried*, No. 21-cr-287 (TNM), this Court sentenced Mr. Hunter Seefried to **24 months'** incarceration. Like Mr. Secor, Mr. Seefried's highest conviction was § 1512(c)(2), he had no criminal history, and he was in his early 20s at the time of the offense. But unlike Mr. Secor, who pleaded guilty, Mr. Seefried went to trial and was found guilty of § 1512(c)(2), along with four other misdemeanors. Furthermore, Mr. Seefried was part of the group that followed Officer Goodman up the stairway.

Then, in *United States v. Kevin Seefried*, No. 21-cr-287 (TNM), this Court sentenced Mr. Kevin Seefried, Hunter's father, to **36 months'** imprisonment. Like Mr. Secor, Mr. Seefried was found guilty of § 1512(c)(2) and had no criminal history. Unlike Mr. Secor, however, Mr. Seefried (1) went to trial rather than pleading guilty; (2) was significantly older than Mr. Secor; and (3) had a one-on-one interaction with Officer Goodman, using a Confederate flag as a weapon against him. Indeed, this Court noted that "among the January 6th rioters I've sentenced this far for nonassaultive conduct, [Mr. Seefried's] actions [were] at the most egregious end." Dkt. 143 at 39 (case number 21-cr-287).

And in *United States v. Bauer*, No. 21-cr-386 (TNM), this Court sentenced Ms. Bauer to **27 months'** imprisonment. Like Mr. Secor, Ms. Bauer was found guilty of § 1512(c)(2) and had no criminal history. Unlike Mr. Secor, however, Ms. Bauer (1) went to trial rather than pleading

13

guilty; (2) was significantly older than Mr. Secor; (3) made threats to Speaker Nancy Pelosi that this Court called "credible"; and (4) personally shoved a police officer.

### III.     CONCLUSION

Mr. Secor respectfully requests that this Court consider a modest reduction in his sentence pursuant to retroactive Amendment 821 for being a "zero-point" offender and reduce Mr. Secor's sentence to 30 months' incarceration.

Respectfully submitted,<br>
/s/ Brandi Harden<br>
Brandi Harden, Esq.<br>
Counsel for Christian Secor<br>
Bar No. 470-706<br>
Harden | Law, PLLC<br>
400 7th Street NW, Suite 604<br>
Washington, DC 20004<br>
202.390.0374<br>
bharden@hardenpinckney.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2024, I caused a copy of the foregoing motion to be served on counsel of record via ECF.

/s/ Brandi Harden
_____
Brandi Harden, Esq.