UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CHRISTIAN ALEXANDER SECOR,**<br><br>Defendant. | Case No. 21-CR-157 (TNM) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF BASED ON AMENDMENT 821 TO U.S.S.G. § 4C1.1**

The United States, by and through its attorney, the United States Attorney for the District of Colombia, respectfully submits this response to the defendant's motion for relief based on the amendment to U.S.S.G. § 4C1.1. ECF No. 61. For the following reasons, defendant's sentence should not be modified.

I.     FACTUAL BACKGROUND

The defendant, Christian Secor, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.

Secor attended the Stop the Steal rally on the downtown mall on January 6, and then joined the crowd that marched to the U.S. Capitol. He entered the Senate Wing door of the Capitol building at approximately 2:26 p.m., approximately 13 minutes after it was initially breached. He subsequently walked through the Crypt, then walked to the second floor of the building, through the office suite of Speaker of the House Nancy Pelosi, where, as this Court noted at sentencing, "There were staffers cowering in offices throughout the Capitol, terrified that rioters like [Secor]

might force their way into those rooms and attack them. They were barricading themselves in offices and frantically calling law enforcement for help." Sentencing Tr.: 47:13-21. Secor is, in part, responsible for the trauma they experienced on that day.

Secor then marched on to the Rotunda and found himself at the East Rotunda doors. At approximately 2:38 p.m., Secor assisted a group of rioters inside the building to push against those doors, which were being guarded by three Capitol Police officers. The group of rioters overpowered the officers, trapping them against the doors, while other rioters were able to pour in through the doors and enter the building. As this Court noted at sentencing, Secor "certainly participated in a very volatile situation, one that could have left to serious injuries." Sentencing Tr.: 48: 5-6.

Secor then walked up the stairs to the Senate gallery, which he entered at approximately 2:42 p.m. He sent a photograph of his hand with the Senate dais in the background to another individual. He then went down to the floor of the Senate, where he mounted the dais and sat in the seat that had been occupied by Vice President Mike Pence approximately 30 minutes earlier. While Secor occupied the seat at the Senate dais—and other rioters were present inside the Senate Chamber and the U.S. Capitol building—the joint session to count and certify the votes of the Electoral College for the 2020 Presidential Election could not continue. At sentencing, this Court stated that Secor's "decision to sit in the Vice President's chair at the very time he was supposed to be certifying the election showed a blatant disrespect for the office of the Vice President and our system of government." Sentencing Tr. 48:18-21.

On May 19, 2022, Secor pled guilty to Count One, Obstruction of an Official Proceeding Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2), 2. This Court sentenced Secor on

October 19, 2022 to 42 months' incarceration, 3 years' supervised release and a special assessment of $100. Secor is presently set to be released from incarceration on March 17, 2025.

## II.     RETROACTIVE APPLICATION OF U.S.S.G. § 4C1.1

U.S.S.G. § 4C1.1 provides for a two-level reduction for offenders with no criminal history points who are not subject to any of ten exclusionary criteria, including:

- § 4C1.1(2):  the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
- § 4C1.1(3):  the defendant did not use violence or credible threats of violence in connection with the offense;
- § 4C1.1(4):  the offense did not result in death or serious bodily injury;
- § 4C1.1(7):  the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense).

Section 4C1.1 may be applied retroactively to previously sentenced inmates, pursuant to U.S.S.G. § 1B1.10. Such a reduction may occur as provided in 18 U.S.C. § 3582(c)(2), which states:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory. Instead, a "court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2) (emphasis added). Additionally, any proceeding under Section 3582(c)(2) is not a full resentencing, so a court is not permitted to reconsider other sentencing determinations left unaltered by the Section 4C1.1 amendment. *Dillon v. United States*, 560 U.S. 817, 825-826 (2010); U.S.S.G. § 1B1.10(a)(3).

A court considering a motion for a sentence reduction due to § 4C1.1 must follow a two-step process. *Id.* at 826. First, the court must determine whether the defendant is eligible for a sentence reduction. A defendant is only eligible under § 4C1.1 reduction if: (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon v. United States*, 560 U.S. at 827.

Even if step 1 is satisfied, a sentencing reduction is not required. Instead, § 1B1.10 directs that before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction." U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii); *see also id.* Background ("The authorization of such a discretionary reduction ... does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In particular, the court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See, e.g., United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Section 1B1.10 application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." That means the court may, but is not required, to consider the defendant's post-sentencing rehabilitation, if any. *See United States v. Rodriguez-Rosado*, 909 F.3d 472, 481 (1st

Cir. 2018); *United States v. Banderas*, 858 F.3d 1147, 1150 (8th Cir. 2017).Such conduct would include social media posts and other statements relating to the Capitol riot on January 6, 2021.

If the court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A).  Thus, the court may not reduce the sentence below the range provided by the amended guideline, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

### III.   NO SENTENCING REDUCTION IS WARRANTED

#### A.  Secor is not eligible for a reduction under § 4C1.1.

Secor is not eligible for the sentencing reduction under the Section 4C1.1 amendment because his actions toward officers stationed at the East Rotunda doors constituted a credible threat of violence.

Secor was in the United States Capitol for half an hour, as part of a violent mob of people who assaulted officers and damaged property—all while Congress was, by law, required to be engaged in a joint session to certify the Electoral College vote of the 2020 presidential election. Inside, he joined a group of rioters who threw their collective body weight against three Capitol Police officers guarding the East Rotunda doors. Specifically, as the three officers were slowly surrounded by dozens of rioters, the rioters pushed against the officers and tried to reach past them to open the door to the outside, where dozens of other rioters stood waiting to enter the Capitol, in plain view of those inside. Secor joined this mob and, for approximately 12 seconds, threw his weight on the backs of other rioters, pushing against and trapping officers between the rioters and the door jamb, before the rioters ultimately pushed the officers aside and forced the doors open. As rioters from the outside flooded in, Secor retreated briefly, but then returned to the melee again,

pushing and throwing his weight on the backs of fellow rioters who were now targeting another officer trying to block rioters from entering the building. Once the mob removed this next officer from the doorway, dozens more rioters were able to enter.

This Court defined "violence" in the context of § 4C1.1 as "[t]he use of physical force," typically "accompanied by fury, vehemence, or outrage" and "unlawfully exercised with the intent to harm," and the "exertion of any physical force so as to injure or abuse." *United States v. Bauer*, No. 21-cr-386-2 (TNM), ECF No. 195 at 4-5; *see also United States v. Hernandez*, No. 21-cr-445 (CKK), ECF No. 65 at 5 (adopting the definition of violence from *Bauer*). This court also defined a credible threat of violence as "a believable expression of an intention to use physical force to inflict harm." *United States v. Bauer*, No. 21-cr-386-2 (TNM), ECF No. 195 at 6. In evaluating whether violence or credible threats of violence were posed by a defendant's conduct, the Hon. Judge Howell has noted that "context matters critically." *United States v. Andrulonis*, No. 23-cr-085 (BAH), Sentencing Tr. at 11-12 Judge Howell elaborated:

> In other words, evaluating a defendant's offense conduct requires examination of all the factors of the offense including what the particular defendant being sentenced did; where he was; what he was seeing; what a person would reasonably understand was the volatility of the situation; the threat that whole situation would pose to others; the foreseeable harm of the situation; and the consequences of the specific defendant's individualized actions. So the fact that this defendant is not personally charged with assaulting or attacking officers is, therefore, not sufficient to make him eligible for the zero criminal history score offense-level reduction.

*United States v. Andrulonis*, No. 23-cr-085 (BAH), Sentencing Tr. at 11-12.

While it is true that this Court at sentencing did not determine that Secor personally injured or threatened to injury anyone (Sentencing Tr. 48: 3-4)[1], the Court should look at the broader

---

[1] Indeed, in an argument about whether the enhancement under § 2J1.2(b)(1)(B) applied to this defendant, the Court did not rule on whether Secor's conduct caused or threatened any physical injury to any person, because the Court rejected the enhancement on the basis that the government did not meet its burden to show that the defendant obstructed or interfered with the administration of justice as required for that enhancement to apply. Sentencing Tr. 17: 25 – 18:11.

context of the defendant's actions to determine whether he is eligible for a § 4C1.1 reduction. As the Court has seen in the video exhibits submitted with the government's sentencing memorandum in this case, Secor's actions at the East Rotunda doors caused an extremely volatile situation. By throwing his weight against a crowd that was forcing three officers to be pinned against a set of doors, Secor knew his actions constituted a credible threat of violence towards those officers. Therefore, Secor is ineligible for the reduction. *See, United States v. Giberson*, Case No. 23-cr-115 (CJN) (Court did not apply the Section 4C1.1 reduction when the defendant participated in a heave-ho push against the police line), *but see United States v. Crowley*, 23-cr-045 (TNM) (Court did apply the Section 4C1.1. reduction when mere presence in the Lower West Terrace tunnel was not a credible threat of violence).

    **B.  Even if the Court determines that § 4C1.1 applies, it should not reduce Secor's sentence.**

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline amendments lowered the sentencing ranges. *See, e.g.*, *United States v. Strand*, 21-cr-085 (CRC), ECF No. 150 at 7-8; *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013).

Here, the Section 3553(a) factors counsel against granting a sentence reduction. Secor's criminal conduct on January 6 and after was particularly concerning. The defendant was an early entrant into the Capitol, entering approximately 13 minutes after the breach. Secor's march through the Capitol took him to particularly sensitive places in the Capitol relevant to the day's proceedings, including the Speaker of the House's suite and the Senate Floor. Indeed, this Court

noted at his sentencing that Secor's "conduct on January 6th was extremely serious. Your actions were about as blatant and obstructive as any I've seen from that day that do not involve actual violence against law enforcement." Sentencing Tr.: 49:15-18.

The Court already engaged in a thorough analysis of the factors relevant to this defendant's sentencing. The Court's guidelines analysis at the original sentencing placed the defendant at an Offense Level 13, with a guidelines range of 12 to 18 months, significantly lower than the range calculated by Probation and the government. Sentencing Tr. 20: 4-5. Yet, this Court fashioned a sentence above its own range when it considered the 3553(a) factors. First, the Court varied upward because it could not "ignore the totality of events, including [Secor's] involvement in pushing officers of the way who were blocking a door." Sentencing Tr. 51: 20-22. The Court also considered the defendant's "substantial interference with an official proceeding like a certification process, which is itself more significant than almost any court proceeding" in elevating the sentence above the calculated range. The Court considered close comparators, notably *United States v. Hale-Cusanelli*, 21-cr-37, who received a higher sentence even though the Court considered "[Secor's] conduct on January 6th was actually more serious than his, especially [Secor's] conduct on the Senate floor." Sentencing Tr. 52:17-24. As the Court concluded at sentencing, "whether this is viewed as an upward variance from the guideline range I calculated or a downward variance from the range the probation office calculated, I would still issue the same sentence, recognizing that the guidelines are voluntary and, frankly, are not very well suited to this particular situation." Sentencing Tr. 53:24 – 54:3.

More broadly, the 3553(a) factors counsel against a sentence reduction for the further reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm

to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Finally, the government notes that the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. *See, e.g.*, *United States v. Little*, No. 21-cr-315 (RCL), ECF No. 73 at 4 ("The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications criminal activity have gone mainstream.").

Thus, due to the unique nature of the January 6 riot, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless deny a sentence reduction. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.[2]

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY
                D.C. Bar No. 481052

BY:   /s/
                KIMBERLY L. PASCHALL
                Assistant United States Attorney
                National Security Section
                D.C. Bar No. 1015665
                601 D Street, N.W.,
                Washington, D.C. 20530
                202-252-2650
                Kimberly.Paschall@usdoj.gov

---

[2] If the Court does decide in its discretion to grant the defendant's motion, the government requests that the Court delay release by 10 days in order to allow time for the Bureau of Prisons to process the release, as recommended by the Committee on Criminal Law of the Judicial Conference of the United States in its January 25, 2024 memorandum.