UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**ALEXANDER SECOR**,<br><br>Defendant. | Case No. 1:21-cr-00157 (TNM) |

## MEMORANDUM ORDER

Alexander Secor pleaded guilty to Obstruction of an Official Proceeding in connection with the riot at the U.S. Capitol on January 6, 2021. Judgment at 1, ECF No. 57. For this he was sentenced to 42 months' imprisonment. *Id*. at 2. Secor now moves for the Court to take a year off his sentence, based on a recent Sentencing Guidelines amendment. Mot. at 1, 4, ECF No. 61. Because he does not meet the prerequisites for such a reduction, Secor's motion will be denied.

**I.**

Secor went to the Capitol Building on January 6, 2021, intending "to protest Congress' [*sic*] certification of the Electoral College vote." Statement of Offense ¶ 8, ECF No. 43. He brought a gas mask, *id*. ¶ 11, seemingly anticipating unrest. When he arrived at the Capitol, he congregated with other protestors on the West Front of the Capitol grounds. *Id*. ¶ 14. But when the protest turned to a riot, he did not leave; instead, he climbed scaffolding on the side of the Capitol Building and went inside. *Id*. ¶¶ 14–15.

Once inside, he remained in the Capitol Building for roughly 25 minutes. *Compare* Statement of Offense ¶ 15 (entering), *with id*. ¶ 20 (leaving). He traipsed about the building. He first went to the Crypt, *id*. ¶ 15, then to the House side, *id*., then to the Speaker of the House's private office suite, *id*., before returning to the Rotunda, *id*.

And his time in the Capitol was no mere walking tour.  Instead, he actively opposed police and aided other rioters.  He, along with two dozen other rioters, confronted and overwhelmed three U.S. Capitol Police officers who were guarding the East Rotunda doors.  Statement of Offense ¶ 16.  He "threw [his] weight against the doors," "trapp[ing] the three Capitol Police officers against" them.  *Id*.  He and the other rioters thus breached the East Rotunda doors, *id*., "overpower[ing] the officers" and helping other rioters enter the building, *id*.

After overwhelming the officers, Secor made his way to the Senate Chamber.  He entered through the Senate Gallery, Statement of Offense ¶ 17, before making his way to the Senate Floor, *id*. ¶ 19.  Once on the floor, he sat in the Vice President's chair on the Senate Dias for two minutes.  *Id*. ¶¶ 19–20.  After doing so, he left the building.  *Id*. ¶ 20.

The Government charged Secor with four felonies and six misdemeanors for his conduct.  Superseding Indictment, ECF No. 28.  He struck a deal and pleaded guilty to just one felony—Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2).  Plea Agreement ¶ I, ECF No. 42.  In return, the Government dismissed the other charges.  *Id*. ¶ III.  The Court sentenced Secor to 42 months' imprisonment and three years of supervised release.  Judgment at 2, 3.

## II.

When the Sentencing Commission amends the Sentencing Guidelines—as it did here—district courts can modify sentences that were issued based on the old guidelines.  To decide whether to do so, courts follow a two-step process.  First, they ask whether the defendant's sentence is affected by the amendment.  That is, they "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized."  *Dillon v. United States*, 560 U.S. 817, 827 (2010).  After that, they ask whether, given the new guideline range, they would have sentenced the defendant to a different punishment.  *Id*.  So, they reapply the 18 U.S.C.

§ 3553(a) factors to ask whether, if they were sentencing the defendant today, they would impose a different sentence. *Id*.

At issue in this motion is "Amendment 821." That amendment, which became effective in November 2023, decreases certain defendants' total offense level by two points. U.S.S.G. § 4C1.1(a). It applies that two-point reduction to defendants who have no prior criminal history points, *id*. § 4C1.1(a)(1), and who did not engage in specially disfavored conduct, *id*. § 4C1.1(a)(2)–(10). Most relevant here is that the defendant must not have "use[d] violence or credible threats of violence in connection with the offense." *Id*. § 4C1.1(a)(3).

## A.

The Court must first decide whether Secor is eligible for a reduction. *Dillion*, 560 U.S. at 827. No one disputes that he qualifies under the first prong of Amendment 821: He has no criminal history points. Sentencing Tr. at 7:5–7, ECF No. 56. So his eligibility comes down to whether he used violence or a credible threat of violence in connection with this offense.

An individual "use[s] violence" within the meaning of § 4C1.1(a)(1) when he uses physical force with the intent or effect of injuring or abusing another. *United States v. Bauer*, --- F. Supp. 3d ---, 2024 WL 324234, at *2 (D.D.C. 2024). On this score, the Court has already concluded that Secor did not use violence in connection with his crime of conviction. Sentencing Tr. at 49:15–18 ("Your actions were about as blatant and obstructive as any I've seen from that day that do not involve actual violence against law enforcement."). The Government does not dispute this determination, so the Court stands by it. *See United States v. Kevin Seefried*, --- F. Supp. 3d ---, 2024 WL 1299371, at *3 (D.D.C. 2024).

Instead, the Government's chief argument is that Secor used credible *threats* of violence. *E.g.*, Opp'n at 6–7, ECF. No. 62. An individual makes a credible threat of violence under § 4C1.1(a)(1) when he "believabl[y] express[es] an intention to use physical force to inflict

harm." *Bauer*, 2024 WL 324234, at *3.  The Government argues that Secor's conduct in helping breach the East Rotunda doors constituted a credible threat of violence.  The Court agrees.

Secor joined a mob of two dozen others and worked with them to box outnumbered police officers against a door.  Statement of Offense ¶ 16.  With the officers vastly outnumbered, and their backs to the wall, Secor and the mob pushed themselves forward, throwing their weight against the officers and doors.  *Id*.  Secor "brac[ed] his body against the backs of the other rioters as they pushed," "ultimately overpower[ing] the officers" and forcing them to give way.  *Id*.

A reasonable officer in the position of the three Secor confronted would have perceived his conduct to be a credible threat of violence.  Consider what those officers encountered.  Three officers were confronted by a crowd of 25 rioters—eight times their number.  Statement of Offense ¶ 16.  Those rioters backed the officers against a closed door, denying them any readily accessible retreat.  *Id*.  They then advanced toward the officers, pushing against them and forcing their backs further to the door.  *Id*.  An officer in this situation would reasonably conclude that the members of the crowd intended to harm him.

Confronted by a crowd of that size and agitation taking those actions, the officer would have understood there to be an "implied" "declaration . . . of an intent to inflict loss or pain" on him.  *Bauer*, 2024 WL 324234, at *3.  That is especially true considering the broader context of the riot at the Capitol that day—in the midst of an ongoing civil disorder, conduct is more readily liable to be seen as threatening violence.  It is true enough that Secor's threat of violence was nonverbal, but that changes nothing.  The definition of threat does not require verbal communication.  *See id*.  Indeed, by stating that the declaration might be "implied," it expressly contemplates the possibility of nonverbal threats.  *See id.*  And that makes perfect sense.  One might nonverbally threaten another in many ways—for example, if a man points a gun at

4

someone, he threatens violence even if he remains mute. So, because Secor did *credibly threaten* to use violence, he is ineligible for the reduction under Amendment 821.

**B.**

But even if Secor *were* eligible for the Amendment 821 reduction, the Court would still refuse to reduce his sentence at *Dillon* step two. At step two, the Court must reweigh the 18 U.S.C. § 3553(a) factors and decide whether it would impose a difference sentence, considering the new guidelines range. *Dillon*, 560 U.S. at 827. It would not.

The guidelines range did not drive the Court's initial sentencing decision. As the Court noted, "the guidelines are voluntary and, frankly, are not very well suited to this particular situation." Sentencing Tr. at 54:2–3. In fact, Secor's conduct at the Capitol featured significant aggravating factors that were not captured by the guidelines range calculation. *Id*. at 53:12–19. For that reason, the Court felt the need for "a significant *upward* variance" from the guidelines range it had calculated. *Id*. (emphasis added); *see also United States v. Hunter Seefried,* 639 F. Supp. 3d 8, 20 (D.D.C. 2022) (noting that, while guidelines departures did not encompass Capitol riot, courts can still account for this conduct through an upward variance). It would be passing strange for the Court—having already concluded that the guidelines range was too low— to now reduce Secor's sentence because the range should be even lower.

More, when the Court looked at comparators, it focused on *United States v. Hale-Cusanelli*, No. 1:21-cr-00037 (TNM), which resulted in a sentence of four years' imprisonment. Sentencing Tr. at 52:15–53:10. The Court concluded that something "below his," but "in the similar neighborhood" was appropriate. *Id*. at 53:7–10. That comparator helped anchor Secor's sentence and was partially responsible for the 42-month prison term Secor received.

The result was a sentence "sufficient but not greater than necessary to comply with the purpose of sentencing." Sentencing Tr. at 54:4–5; *see also* 18 U.S.C. § 3553(a). The only thing that has changed since then is the guidelines range. *Id*. § 3553(a)(4). But the dominant features that drove Secor's sentencing, "the nature and circumstances of the offense" and the sentences awarded to "defendants with similar records who have been found guilty of similar conduct" have not changed. *Id*. § 3553(a)(1), (a)(6). Because those sentence-driving factors remain the same, so too will Secor's sentence.[1]

\*   \*   \*

One final note. Recall that Secor pleaded guilty to violating 18 U.S.C. § 1512(c)(2). After he filed this motion for a reduced sentence, the Supreme Court limited the scope of that statute in *Fischer v. United States*, 144 S.Ct. 2176 (2024), another Capitol riot case. But that decision is relevant only to the validity of Secor's conviction, so the correct way to invoke it is through a motion under 28 U.S.C. § 2255. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *United States v. Jenkins*, 50 F.4th 1185, 1200 (D.C. Cir. 2022). Secor has waived his right to raise any such motion in exchange for having his remaining charges—including other felonies—dismissed. Plea Agreement ¶¶ IX.E, F. So *Fischer* is irrelevant to the disposition of this motion.

---

[1] Secor also references his "nearly unblemished disciplinary record from his period of incarceration." Mot. at 12. That record may be "commendable, but it is also expected." *Gionet v. United States*, 1:22-cr-00132-TNM-1, ECF No. 88 at 2. So Secor's "good behavior in prison—while laudable—does not outweigh the other factors that support [the] sentence of incarceration" the Court imposed. *United States v. Rheiner*, No. 1:22-cr-00108-DLF, 2024 WL 2251875, at \*1 (D.D.C. May 17, 2024).

For these reasons, the Court **ORDERS** that Secor's [61] Motion to Reduce Sentence is **DENIED**.

**SO ORDERED**.

Dated:  July 12, 2024                                          TREVOR N. McFADDEN, U.S.D.J.